**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| HAZEL MARIE COWAN, | Case No. 1:12-cv-186 |
| Plaintiff, | Dlott, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Hazel Marie Cowan filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error for this Court's review.  As explained below, the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed applications for disability insurance benefits ("DIB") and for Supplemental Security Income ("SSI") in October 2007, alleging a disability onset date of March 2007,[1] due to a combination of physical and mental impairments. After her application was denied initially and on reconsideration, she requested a hearing de novo before an Administrative Law Judge  ("ALJ").  On April 5, 2010, an evidentiary hearing was held before ALJ Ronald C. Dickinson.  Plaintiff appeared with counsel and

---

[1] Plaintiff later amended her disability onset date to June 2007.

1

provided testimony; a vocational expert also provided testimony. (Tr. 32-53). On April 23, 2010, the ALJ denied Plaintiff's application in a written decision. (Tr. 16-24).

Plaintiff's last insured date was June 30, 2011. Therefore, she must show that she became disabled on or before that date for purposes of her DIB application. Her SSI application is not dependent on her insured status.

The record reflects that Plaintiff was 49 years old on her alleged disability onset date. She has a limited education, having completed school through the eleventh grade.

Plaintiff performed no substantial gainful activity between her claimed onset date through the date last insured. The ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, ischemic cardiac disease, coronary artery disease (CAD), she is status-post two coronary artery stents, status-post automatic implant cardiac defibrillator (AICD), she has asthma, chronic obstructive pulmonary disease (COPD), she is status-post four coronary artery bypass grafts, and she has hepatitis C, long-term tobacco abuse, a history of intravenous methadone abuse allegedly in remission three years, hypertension and chronic pain." (Tr. 19). However, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

The ALJ held that Plaintiff retained the residual functional capacity to perform a limited range of light unskilled work, so long as that work "allows a sit-stand option and

does not require crawling, crouching, climbing, squatting, kneeling, or use of her lower extremities for pushing or pulling." (*Id.*).

The ALJ found that Plaintiff could not perform her past relevant work as a dispatcher, sales clerk, or cashier, because all three positions were classified as semi-skilled and Plaintiff is limited to unskilled work. (Tr. 22). However, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy, based upon her age, education, work experience, and RFC. (Tr. 23). For that reason, the ALJ held that Plaintiff was not under a disability. (Tr. 24). The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff contends that the ALJ erred (1) by failing to give controlling weight to the opinions of treating physicians; and (2) in negatively assessing Plaintiff's credibility.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. See 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that

4

claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B.  Plaintiff's Statement of Errors

In this case, Plaintiff asserts that the ALJ erred: (1) by failing to give controlling weight to three treating physicians; and (2) by improperly assessing Plaintiff's statements as "not credible" to the extent that they were inconsistent with the RFC determined by the ALJ.  The asserted errors impact both Steps 4 and 5 of the sequential analysis.

#### 1.  The Weight Given to Plaintiff's Treating Physicians

##### a.  Relevant Standards

The relevant regulation concerning the opinions of treating physicians, 20 C.F.R. §404.1527(c)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  *Id.; see also Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The treating physician rule requires "the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."   *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

The reasoning behind the rule has been stated as follows:

5

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Com'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996). In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion, such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(c)(2).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *Id.* Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley*, 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96-2p. An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the

6

Commissioner could not possibly credit it." *Blakley*, 581 F.3d at 409 (quoting *Wilson*, 378 F.3d at 547).

On the record presented, Plaintiff argues that the ALJ erred by failing to give the opinions of three different treating sources "controlling weight," and by failing to give "good reasons" for rejecting their opinions. The Court agrees.

### b. Analysis of the Opinions of Drs. Sway, Zerr, and Cantor

Dr. Daniel Sway is a primary care physician. On September 19, 2008, he treated Plaintiff for left hip pain, and noted Plaintiff's history of myocardial infarction, severe asthmatic bronchitis, hernia repair, bilateral carpal tunnel syndrome, and thoracolumbar scoliosis. (Tr. 1332). He also noted rectal lumbar scoliosis and a prominent scar from bypass surgery. (Tr. 1333). On October 20, 2008, Dr. Sway noted that Plaintiff appeared pale and lethargic, older than her stated age, with a dramatic presentation (Tr. 1324). He diagnosed similar conditions as in September, including asthmatic bronchitis, hyperlipidemia, essential hypertension, and chronic ischemic heart disease. (*Id.*). On November 17, 2008, he noted carpal tunnel syndrome, hyperlipidemia, hypertension, chronic ischemic heart disease and scoliosis. (Tr. 1504-1506). On March 2, 2009, he saw Plaintiff for follow-up treatment for increased anxiety that had not responded to medication, as well as for hypertension and hyperlipidemia. He also assessed COPD and lumbar disc disease that resulted in pain radiating into the legs. (Tr. 1517-1521).

On February 3, 2009, Dr. Sway completed a Multiple Impairment Questionnaire on Plaintiff's behalf. (Tr. 1508-1515). On that form, Dr. Sway offered opinions concerning Plaintiff's limitations, including an opinion that she could sit and could not

7

stand/walk for more than one hour, and only occasionally lift and/or carry up to ten pounds during an eight-hour day. (Tr. 1510-1511). Dr. Sway further recommended that Plaintiff not be required to sit or stand continuously, and that for every 20-30 minutes of sitting, she would require one hour breaks to get up and move around. He opined that Plaintiff had significant limitations in performing repetitive reaching, handling, fingering, or lifting, as well as marked bilateral limitations in grasping, turning and twisting objects and in reaching. (Tr. 1511-1512). Last, he opined that, due to her mental impairments of anxiety and depression, Plaintiff is incapable of even "low stress" work. (Tr. 1513). He opined that she would be absent from work 2-3 days each month. (Tr. 1514).

Dr. Ryan Zerr, like Dr. Sway, was a treating family practitioner. On September 28, 2009, he treated Plaintiff for high cholesterol, pain, and Hepatitis C. (Tr. 1809). On October 19, 2009, he saw Plaintiff for Hepatitis C. (Tr. 1808). On November 23-25, 2009, he treated Plaintiff for back pain, prescribing physical therapy. (Tr. 1806-1807). On December 10, 2009, he diagnosed chronic pain and prescribed a muscle relaxer. (Tr. 1805). On February 17, 2010, he reported that Plaintiff's chronic pain was "stable," but noted diagnoses of CAD and hepatitis C. (Tr. 1803).

On February 20, 2010, Dr. Zerr completed the same form that had previously been completed by Dr. Sway, offering specific opinions concerning Plaintiff's functional limitations. (Tr. 1812-1819). Dr. Zerr limited Plaintiff to sitting for a total of three hours per day, standing/walking for no more than one hour per day, and only occasionally lifting and/or carrying up to ten pounds. (Tr. 1814-1815). He recommended that she not be required to sit or stand/walk continuously, but instead that she be permitted to

get up and move around 2-3 times per hour. (Tr. 1814). Like Dr. Sway, he opined that Plaintiff had significant limitations in repetitive reaching, handling, fingering, or lifting, as well as marked bilateral limitations in using her fingers/hands for fine manipulations. (Tr. 1814-1816). Also consistent with Dr. Sway, Dr. Zerr opined that Plaintiff's depression from her pain level would preclude her from even a "low stress" work environment. (Tr. 1817). He indicated that she would be absent more than three times per month, explaining that her Hepatitis C makes her prone to infections (Tr. 1818).

The ALJ assigned Dr. Sway's opinions "little evidentiary weight," based upon a perceived internal inconsistency. Specifically, in one portion of the form, Dr. Sway indicates that Plaintiff's conditions combined with her level of pain prevent her from all sitting and from standing/walking more than one hour per day. However, in another section of the same form, Dr. Sway opines that Plaintiff would need to get up and move around after 20-30 minutes of sitting, but could not sit again for an hour. The ALJ viewed this opinion as contrary to Dr. Sway's opinion that she could not stand/walk for more than one hour. "Since Dr. Sway also indicated that the claimant could not sit again for an hour, his assessment contradicts itself and appears to be unreasonable." (Tr. 21). The ALJ also noted "that Dr. Sway's …statement contradicts Dr. Zerr's medical source statement." (*Id.*).

It is significant that the ALJ did not find that the opinions of Drs. Sway and Zerr were inconsistent with objective medical evidence, or with the record as a whole. Plaintiff argues that both opinions were "well-supported" and therefore entitled to controlling weight. Plaintiff further asserts, correctly, that Dr. Sway's opinion is not

internally inconsistent so long as one reads the opinion as requiring Plaintiff to change positions from sitting to lying down, rather than to walking/standing for an entire hour after every 20-30 minutes of sitting. In fact, Plaintiff testified that she spends most of her day reclining.

Defendant argues that the ALJ properly applied the treating physician rule based upon the fact that Drs. Sway and Zerr "contradicted themselves" in the amount of time that each opined that Plaintiff could sit. (Doc. 11 at 6). However, as set forth above, the two opinions were far more similar than dissimilar. The extent to which the opinions were in conflict concerning the number of hours that Plaintiff could sit might have provided a basis for accepting the less restrictive opinion of Dr. Zerr (so long as it was medically supported), but provides no basis at all for disregarding virtually all of both opinions. It is notable that the postural restrictions provided by both physicians would have precluded the RFC determined by the ALJ. Additionally, the ALJ's RFC does not even mention additional non-postural restrictions offered by both doctors, such as Plaintiff's fingering and reaching restrictions.

Importantly, Defendant concedes that the ALJ does not discuss the relevant factors, specifically articulated in the regulations, prior to discounting the opinions of the treating physicians. (Doc. 11 at 6). Nevertheless, Defendant argues that under *Wilson*, 378 F.3d at 547, such an omission may be considered harmless error "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." Defendant argues in this appeal, citing selective evidence, that Drs. Sway's and Zerr's opinions were in fact contrary to other evidence in the record, such as the opinion

10

of consulting physician Dr. Bailey.  Defendant's detailed comparison with specific contrary pieces of evidence in the record in itself suggests that the opinions of Drs. Sway and Zerr cannot be dismissed as "patently" deficient.[2]  To affirm the Commissioner's opinion on grounds that were neither stated nor, arguably even considered by the ALJ, would defeat the purpose of the regulatory scheme.

Defendant alternatively argues that "even if the reasons offered by the ALJ were not proper," because they do not constitute "good reasons," the RFC opinions offered by Drs. Sway and Zerr need not be considered because they "amount[] to a disability opinion for which the ALJ is not required to give special deference." (Doc. 11 at 8).  The undersigned disagrees. While the determination of disability and the overall determination of a plaintiff's RFC are both decisions left to the Commissioner, a treating physician's medical opinions concerning specific limitations caused by specific medical conditions are precisely the types of opinions entitled to "controlling weight," at least to the extent that those opinions are well-supported.  Based upon the ALJ's failure to comply with the treating physician rule in this case, and failure to provide "good reasons" for rejecting the opinions of Drs. Sway and Zerr, this case must be remanded for further review.

In light of these errors, it is unnecessary to discuss at length the asserted error concerning the opinion of a third physician, cardiologist Dr. Cantor.  Briefly, however, Plaintiff complains that the ALJ did not offer any discussion at all regarding Dr. Cantor.

---

[2]Defendant's reliance on Dr. Bailey's opinions also cannot be sanctioned.  There is no evidence that Dr. Bailey, who apparently examined Plaintiff prior to her heart surgery and prior to the dates of Drs. Sway's and Zerr's opinions, fully considered later medical records. *See Blakley*, 581 F.3d at 408.

Consistent with Drs. Sway and Zerr, Dr. Cantor completed an RFC form that essentially opined that Plaintiff cannot perform even sedentary work.[3] (Tr. 276-280). Defendant disputes that Dr. Cantor should be considered a treating source based upon the fact that only one clinical record appears from Dr. Cantor "and that was to perform surgery." (Doc. 11 at 9). Even assuming that Dr. Cantor saw Plaintiff only once,[4] the undersigned cannot agree that a cardiologist who performs surgery on a claimant should not be classified as a treating source. Therefore, the ALJ will be directed to discuss the opinions of Dr. Cantor on remand.

In short, the ALJ's analysis here is far too cursory to satisfy the "good reasons" standard. Therefore, and mindful of the strong emphasis that the Sixth Circuit has placed upon the "good reasons" standard, *see Rogers v. Com'r of Soc. Sec.*, 486 F.3d 234, 242-243 (6th Cir. 2007), the undersigned concludes that this is not a case in which all three treating source opinions rejected by the ALJ are so "patently deficient" as to render any error harmless.

### 2. Credibility Assessment

In her second claim of error, Plaintiff contends that the ALJ improperly evaluated her credibility. An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127

---

[3] Notwithstanding this overall conclusion, some of Dr. Cantor's opinions were less limiting than the opinions of Drs. Sway and Zerr. Dr. Cantor also indicated that Plaintiff is a malingerer. (Tr. 279).
[4] Additional records reflect that Plaintiff was seen by several physicians at the University Hospital

F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004). However, while an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. As recognized by this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Com'r of Soc. Sec.,* No. 1:07-cv-51, 2008 WL 1733181, at * 13 (S.D. Ohio April 14, 2008) (Beckwith, J; Hogan, M.J,, citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963)).

As with the rejection of the opinions of two treating physicians (and the failure to discuss entirely the opinion of a third), the ALJ's analysis of Plaintiff's credibility is simply too cursory for adequate review by this Court. The Commissioner's own regulations demand more. *See e.g.*, 20 C.F.R. §§404.1529; 416.929; SSR 96-7p. The sum of the ALJ's analysis is a single statement that Plaintiff's impairments could "reasonably be expected to cause some of the symptoms alleged," but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent that they are inconsistent" with the RFC found by the ALJ. (Tr. 22). While the undersigned does not agree with Plaintiff that the use of

---

Cardiac Center from March 10, 2008 through May 19, 2008. (Tr. 681-754).

boilerplate language is *de facto* representative of incomplete analysis, the ALJ's failure to offer *any* additional explanation, such as a citation to discrepancies in the record between Plaintiff's statements and her activities of daily living, or a failure to comply with prescribed treatment,[5] requires remand.

### III. Conclusion and Recommendation

While this is not a case in which an award of benefits is clearly required, this Court cannot simply ignore the ALJ's failure to adequately explain the rationale for his decision.

A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175.

For the reasons explained herein, **IT IS RECOMMENDED**:

1. The decision of the Commissioner to deny Plaintiff DIB and SSI benefits should be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g);

---

[5]Defendant notes evidence that Plaintiff continued to smoke, although Plaintiff testified that she either was in the process of quitting or had quit. Such factors may be considered, but "continued smoking …does not per se disqualify a Plaintiff from receiving disability benefits." *Becker v. Com'r of Soc. Sec.*, 2009 WL 483833 at n.6 (S.D. Ohio, Feb. 25, 2009).

2. Consistent with this R&R, the ALJ should reevaluate: a) the weight to be given to each treating source opinion; and b) Plaintiff's credibility;

3. As no further matters remain pending for the Court's review, this case should be **CLOSED**.

<u>s/ Stephanie K. Bowman</u><br>
Stephanie K. Bowman<br>
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HAZEL MARIE COWAN,             Case No. 1:12-cv-186

    Plaintiff,                               Dlott, J.

v.                                        Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).